UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID COLBY                                        CIVIL ACTION

VERSUS                                             NO. 10-1004

MARLIN GUSMAN ET AL.                               SECTION "F" (2)


## REPORT AND RECOMMENDATION

Plaintiff, David Colby, is a convicted prisoner currently incarcerated in the Natchitoches Detention Center in Natchitoches, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman and the Louisiana Department of Corrections ("DOC"). Colby alleges that he was subjected to various unconstitutional conditions of confinement while incarcerated in the House of Detention ("HOD") facility of the Orleans Parish Prison system ("OPP") for a four-month time period in 2010.  He seeks monetary damages in the amount of $10,000 and injunctive relief.  Record Doc. No. 1 (complaint at ¶ V).

On June 3, 2010, I conducted a telephone conference in this matter.  Participating were plaintiff pro se; Freeman R. Matthews and Phyllis Glazer, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Colby testified that he is currently incarcerated in Natchitoches based upon a conviction on January 21, 2010 on a charge of unauthorized entry, for which he is serving a six-year prison sentence.  He testified that he was arrested on that charge in March 2009 and that he was incarcerated in OPP from the date of his arrest until his transfer to Natchitoches at the end of May 2010 and that his claims in this case arise from his OPP incarceration.

Colby stated that, although his claims concerning unconstitutional conditions of confinement relate solely to his incarceration in OPP, he has also sued the DOC in this action because "I was a DOC inmate at the time, and I should have been in a DOC facility at the time," meaning the four (4) months during which he was kept in OPP after his conviction but before his shipment to the DOC facility in Natchitoches. He stated that he was sentenced to "DOC . . . time" and he should have been sent to a DOC facility upon sentencing, rather than being kept in OPP for the four (4) months after his conviction.

Plaintiff testified that he was housed in the temporary "tent" facility at OPP from the date of his arrest in March 2009 until his sentencing in January 2010.  He clarified, however, that his claims in this case do not relate to his confinement in the tents, about which he does not complain, but only to what he experienced in the HOD facility at OPP,

where he was transferred after his sentencing on January 21, 2010 and where he remained

for the four (4) months from January 22, 2010 through May 27, 2010, until his transfer

to a DOC facility.

Colby testified that his first complaint about HOD conditions concerns "lack of

security, no man on post." He complained that no guard was stationed in the location

where he was housed in HOD, and "I got beat up a couple of times" by other inmates. He

stated that he tried to summon security guards during the incidents, but no security

officers came. Colby explained that he wrote letters asking to be moved, but he received

no response.

Asked to describe the incidents, he testified that one occurred on February 11,

2010, when "I got jumped by three inmates," who "beat me up kinda pretty good." He

described the injuries he suffered in the beating as a "black eye, busted lip and hickeys

on the head." He said he fought with the other inmates for "at least an hour back and

forth." He testified that there were no security personnel anywhere around while the

fight occurred and that the altercation ended when "they got tired, and I got tired." He

said sheriff's deputies did not respond at all to the fight. "The only time you see the

sheriff's deputy is during count, that's every 12 hours," he said. Colby testified that the

February 11th fight occurred on the sixth floor, Cell 3, of HOD South. Asked if he had

been the victim of any other such incidents, he said "no, . . . that's the only confrontation

I basically got into with the other inmates." He said the fight occurred when the other inmates stole items he had purchased from the prison commissary and Colby "said something about it, and the other ones said 'take your licks, don't say nothing, don't rat us out. . . . and before you know it, one of them hit me, and before you know it, I was fighting three of them."

Colby testified that security personnel passed through the area where he was housed in HOD only when the inmates were counted, once in the morning and once at night.  He stated that, in addition, when deputies bring food to the inmates, "they stay in there for a few seconds . . . and they're gone after that." He described the HOD area where he was housed as "a long hallway with three cells; all they do is open the gate and put the food in. . . . They don't walk all the way down the walkway to check on the inmates.  You only see the guards two times a day approximately." Colby testified that there was a desk "in the middle of the hallway," in an area where four hallways intersect and where a security guard is supposed to sit, but "they don't walk the perimeter at all." He said the view from the security pod provides the guard with no visual contact with the inmates, who are located "down a hallway, where they cannot actually see you at all." He said for the guard on duty actually to see the inmates, he must come through a cell door and walk approximately 30 yards, then look to the left.  He said HOD was not equipped with any camera or audio intercom system and that "nine out of ten times when

4

you holler for the guard, they don't even come anyway."  Colby testified that he could not see the guard on duty from his cell.

Colby testified that he had no previous problems with the other inmates with whom he fought on February 11, 2010.  "I got sentenced January 21st, and I moved on that tier January 22nd.  I didn't have no problems till my commissary got stolen," he said. Colby testified that he was afraid for his life, "because they got knives and stuff in there too," but no knives were used on him in the attack.

Colby testified that he submitted an administrative remedies procedure ("ARP") grievance to prison officials complaining about the lack of security after the fight, "saying that my life was in danger," but he received no response. He stated that he would submit a copy of the grievance to the court.  He alleged that he had heard that other inmates in HOD had been stabbed. but he was not stabbed.  He also testified that he received no medical care for the injuries he suffered in the attack, despite his requests. He stated that his injuries "just had to heal up by themselves."

As to this second claim, that he was not provided with adequate medical care during his four-month stay in HOD, Colby testified that he suffers from a knee injury and he wanted to see a psychiatrist because he had problems sleeping due to his security concerns and his feeling that his "life was threatened."  He said that despite his requests to see a psychiatrist, he was not taken to see a psychiatrist or any other kind of doctor.

He said, "I was sick for two weeks straight and they didn't give me no medicine at all." He described this two-week sickness as follows: "I couldn't breathe right, I was wheezing, sinuses were clogged up, I was vomiting, I couldn't hold food down like I had food poisoning or something.  It was a bad, bad stomach virus, I would say, and it took me approximately two weeks to get over it." Colby testified that he saw no medical personnel at all during his illness, despite his requests for medical care.

Colby also testified that the conditions of his confinement in HOD were unsanitary, which he blamed for his illness.  He stated that HOD had no tables to eat on and that the showers caused condensation on the ceiling that dripped onto the food.  He also complained that the toilets in the cells were right next to where he had to eat and that "the water's undrinkable" because it was "brown and . . . tastes real bad.  It comes out the sink, which is connected to the toilet, and it's not clear at all; it tastes horrible."

Colby also said that the cell bars were rusted and smelly; there was mildew and peeling paint on the walls; "they never give cleaning supplies to wipe down the walls; once every week they send in cleaning supplies to mop the floors, . . . very unsanitary conditions."  He also stated that HOD has no air-conditioning or heating system and that the windows are kept open, so that in the winter time "you actually freeze to death . . . summer time there's no ventilation, they have one fan" for ten (10) to seventeen (17)

inmates in a 150 square feet cell with beds and toilets.  Colby said he has a copy of one ARP response concerning his complains of unsanitary conditions in HOD.

As to his claims that HOD lacks job training, educational, religious or drug rehabilitation programs, Colby complained that no self-improvement programs of any kind were available at HOD.  He stated that the DOC facility in which he is currently incarcerated offers several self-help programs, in which he participates and which he needs because he has a drug problem.  His written submissions alleged that he needed such programs as a means to "better myself."  Record Doc. No. 14 at p. 2 of 5.

Colby also asserted that the law library was inadequate at HOD. "I have a couple of civil cases," he said, "and I had no access to any kind of civil law books at all. " He said his civil cases concerned "my house, . . . somebody is trying to sue me for my house, somebody got hurt on my property" in Jefferson Parish.  He said he needed access to civil law books to defend himself in that matter, and he wanted to know his rights as a prisoner.  Colby testified that he wrote for advice to a legal adviser at HOD, but the legal adviser was unable to help him.  He said he does not know the status of the civil case against him in Jefferson Parish.  He said he had written to the state court about the status of that case, but he had received no response and said "the case might have been dropped."  He specified that he had written to the court while he was in HOD in April 2010, but the court did not respond.  He said he also has "an open case" involving a

criminal matter against him pending in Jefferson Parish. Colby testified that the criminal case against him is pending and the he is represented by counsel in that case, but he wanted to try to "help myself" and "do some research on my own" in connection with his criminal case.

Asked if he had difficulty communicating with this court concerning the captioned matter, he said "I haven't had trouble communicating," but he complained that he did not know the correct procedures or how much to ask for in his prayer for relief, since he had no civil law books to help him with this case.

As to his claim against the defendant Louisiana DOC, Colby testified that he was sentenced to incarceration in a DOC facility and alleged that he should not have been held in the HOD facility of OPP after his sentencing. He stated that he should not have had to stay in HOD for four months after he was sentenced.

Expanding upon his first claim, Colby testified that he did not know the name of the guard on duty when he fought with the other inmates in HOD on February 11, 2010, and that the incident occurred at about 8:00 p.m. He said that he did not know who was on duty or the name of the next guard on duty, a woman deputy who passed through the cell area after the fight at about 7:00 a.m. the next morning. Although he "wrote a grievance" concerning the attack, Colby said he did not complain to the guard about the attack when he saw her the next morning because "I would have got beat up again."

Immediately following the conference, plaintiff submitted to my office via telefax copies of two (2) grievance forms he had submitted to the Orleans Parish Criminal Sheriff's Office the prison ARP with their written responses; one dated March 4, 2010, one requesting transfer to a DOC facility "to get my GED so I can better myself" and because "my life is in danger"; the second complaining about "unsanitary eating conditions no tables." Record Doc. No. 14.

Subsequently, pursuant to my order, Record Doc. No. 13, defendant submitted to me plaintiff's medical records for the time period of his subject incarceration in HOD. The records reflect only that, after his initial medical screening, Colby was seen once by a physician on September 21, 2009 in response to his request for a vegetarian diet and three times in the dental department at OPP in response to his request for attention concerning a toothache and a tooth extraction.

## ANALYSIS

### I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as

10

additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

## II.   FAILURE TO PROTECT

Colby alleges that defendants failed to protect him from harm.  Specifically, he alleges that security at the jail was inadequate, resulting in a fight with other inmates. Accepting as true for present purposes all of Colby's written submissions and testimony, I must conclude that no violation of Colby's constitutional rights by the defendants occurred in these circumstances.

Colby was a convicted inmate at the time of the events on which he bases his claims, so that the Eighth Amendment standard applies.  Under the Eighth Amendment,

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

prison officials have a duty to protect inmates from harm and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm, including sexual assault, inflicted by another officer. Morris v. Trevino, 301 Fed. Appx. 310, 2008 WL 4996599, at *1 (5th Cir. 2008); Payne v. Parnell, 246 Fed. Appx. 884, 2007 WL 2537839, at *5 (5th Cir. 2007); Williams v. Humphrey, No. 09-cv-202-bbc, 2009 WL 1444160, at *3 (W.D. Wis. May 20, 2009); McCullough, 2008 WL 5061512, at *12. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,'" as used in the criminal

law, is the appropriate test for deliberate indifference."   <u>Norton</u>, 122 F.3d at 291.

Whether a prison official had the requisite knowledge of a substantial risk is a question

of fact.  <u>Farmer</u>, 511 U.S. at 837; <u>Newton</u>, 133 F.3d at 308.

> [If a] plaintiff presents evidence showing that a substantial risk of . . .
> attacks was longstanding, pervasive, well-documented, or expressly noted
> by prison officials in the past, and the circumstances suggest that the
> defendant-official being sued had been exposed to information concerning
> the risk and thus "must have known" about it, then such evidence could be
> sufficient to permit a trier of fact to find that the defendant-official had
> actual knowledge of the risk.

<u>Farmer</u>, 511 U.S. at 842-43.  Thus, in <u>Adames v. Perez</u>, 331 F.3d 508 (5th Cir. 2003), the

United States Court of Appeals for the Fifth Circuit vacated and remanded a jury verdict

in favor of an inmate, holding that evidence of <u>isolated</u> previous attacks was insufficient

to show deliberate indifference to an inmate's safety or to support a jury's verdict that

prison officials failed to protect the inmate.

In this case, it cannot be concluded that prison officials unconstitutionally exposed

plaintiff to a <u>substantial</u> risk of <u>serious</u> harm because his own testimony confirms that

neither prison officials nor Colby himself had any reason to believe or even suspect that

any danger was posed for Colby under these particular circumstances.  Nothing in the

record or in plaintiff's testimony reveals any history known to prison officials of any

prior incidents between Colby and other inmates.  Colby's description of the single fight

upon which he bases this claim establishes that the incident occurred suddenly and

without warning, a fight over allegedly stolen commissary items. Prison officials had no reason to suspect that the other inmates posed any known or anticipated threat to plaintiff before the fight, just as Colby himself had no reason to believe before the fight that the other inmates posed any threat to him.

Under these circumstances, it cannot be said that jail officials knew of and disregarded an excessive risk to Colby's health or safety. Plaintiff's testimony in this regard, even if accepted as true in its entirety for present purposes, does not rise to the level of deliberate indifference to a known risk of substantial harm required to establish a constitutional violation. See Williams v. Humphrey, 2009 WL 1444160, at *1, *4, *5 (W.D. Wisc. 2009) (because inmate failed to show that defendant prison official Padgett knew about alleged sexual assault against plaintiff by a prison guard, he failed to state a claim against defendant for failure to protect him from the assault); Payne v. Parnell, 246 Fed. Appx. 884, 890, 2007 WL 2537839, at *5 (5th Cir. 2007) (inmate had no failure to protect claim against prison officers who were unaware of any substantial risk posed prior to incidents in question); McCullough v. Quarterman, 2008 WL 5061512, at *12 (S.D. Tx. 2008) (failure to protect claim dismissed where inmate had received no threat and did not assert a need for protection before the subject incident).

Applying the same standards, Colby's more generalized complaints that lax security in HOD was a cause of the fight also fail to state a cognizable Section 1983

claim of failure to protect him from harm.  Colby's own testimony establishes that one guard or another personally passed through the cell area in HOD where he was housed at least five (5) times a day (once at each meal time and twice more a day, once in the morning and once at night, when the inmates were counted) and that another guard was stationed at a central security desk in the hallway.  Colby admitted that he did not report or complain about the fight when the guard walked through the tier on the morning after. The mere fact that the guard stationed at the hallway security desk did not hear or see the fight from the security desk is insufficient to establish deliberate indifference to a known serious risk of harm sufficient to establish a constitutional claim.

For all of the foregoing reasons, plaintiff's Section 1983 claim of failure to protect from harm during the four months of his incarceration in HOD should be dismissed for failure to state a claim upon which relief can be granted.

III.   <u>MEDICAL CARE</u>

As to his second claim, that he was not provided with adequate medical care during his stay in HOD, Colby testified that he suffers from a preexisting knee injury and he wanted to see a psychiatrist because he had problems sleeping due to his security concerns and his feeling that his "life was threatened." He said that despite his requests to see a psychiatrist, he was not allowed to see a psychiatrist or any other kind of doctor.

Colby was a convicted prisoner at all relevant times about which he complains. In Estelle, 429 U.S. at 104, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. The same standards concerning deliberate indifference discussed above in connection with plaintiff's failure to protect claim also apply to this claim.

Thus, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

An inmate must satisfy the same objective and subjective requirements described above to demonstrate that a prison official has violated the Eighth Amendment with regard to plaintiff's medical care. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

18

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace, 333 F.3d at 626.

In this case, Colby's allegations negate any inference that defendants acted with deliberate indifference to his serious medical needs. Although he alleges that he received no medical care during his short four-month stay in HOD, it cannot be concluded that the medical conditions he described, consisting of an aching knee, difficulty sleeping due to worry, and a two-week intestinal illness that resolved on its own, presented serious medical needs that posed a substantial risk of harm during Colby's incarceration at the jail. Although the United States Court of Appeals for the Fifth Circuit has not defined "serious medical need," a majority of the other circuits have adopted the following definition. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (citing Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995); Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987); Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996); Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994)). A medical condition is "serious" when "the

failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992), <u>overruled in part on other grounds by WMX Tech., Inc. v. Miller</u>, 104 F.3d 1133, 1135 (9th Cir. 1997).

Applying this standard to Colby's testimony, his complaint does <u>not</u> rise to the level of a <u>serious</u> medical need for purposes of constitutional analysis.  <u>See</u> <u>Smith v. Crose</u>, No. 06-3168 (FSH), 2006 WL 2591075, at *5 (D.N.J. Sept. 28, 2006) (Hochberg, J.) ("[W]hile Petitioner might have been substantially inconvenienced by Petitioner's insomnia, Petitioner's reduced ability to fall asleep does not amount to a serious medical need.") (citing <u>Universal Calvary Church v. City of N.Y.</u>, 2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) (insomnia does not qualify as a serious injury)); <u>compare</u> <u>Meloy v. Schuetzle</u>, 230 F.3d 1363, 2000 WL 1160446, at *1 (8th Cir. 2000) (Plaintiff had a serious medical need when he had been diagnosed with "potentially life-threatening" obstructive sleep apnea and had been prescribed a continuous air pressure machine to use every night for the rest of his life.); <u>Lockett v. Suardini</u>, 526 F.3d 866, 877 (6th Cir. 2008) ("minor lacerations and cuts" and soreness in two fingers, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs); <u>Lusk v. Dallas County Sheriff's Dep't</u>, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (Lindsay, J.) (herniated disc and

degenerative spinal disease <u>not</u> serious medical needs); <u>Nelson v. Rodas</u>, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (back spasms and pain not a serious medical need); <u>Solomon v. Moore</u>, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (Duffy, J.) (when plaintiff was able to walk and function normally despite various pains, he had no serious medical needs).

In addition, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's serious medical needs based on this record. Colby has made no allegation and presented no testimony sufficient to establish that any OPP official was aware of facts from which the inference could be drawn that Colby faced a serious risk of harm based upon his medical conditions or that any officer actually drew such an inference.

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983.

## IV.   <u>UNSANITARY CONDITIONS</u>

Plaintiff's testimony establishes that he was a convicted prisoner at all relevant times concerning the conditions about which he complains, including that HOD had no tables to eat on and that the showers caused condensation that dripped from the ceiling. He also complained that the toilets in the cells were right next to where he had to eat and

that "the water's undrinkable" because it was "brown and . . . tastes real bad."  He also said that the cell bars were rusted and smelly; there was mildew and peeling paint on the walls; and "once every week they send in cleaning supplies to mop the floors, . . . very unsanitary conditions."  He complained that HOD has no air-conditioning or heating system and that the windows are kept open, so that in the winter time "you actually freeze to death . . . summer time there's no ventilation, they have one fan."

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on convicted prisoners. "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'"  Hamilton v. Lyons, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981); citing Estelle, 429 U.S. at 103; Hutto v. Finney, 437 U.S. 678, 687 (1978)); accord Stanfield v. Gusman, No. 09-7183, 2010 WL 2133877, at *3 (E.D. La. Apr. 21, 2010) (Roby, M.J.), report and recommendation adopted, 2010 WL 2075550 (E.D. La. May 20, 2010) (McNamara, J.).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components."  Davis, 157 F.3d at 1006 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson, 501 U.S. at 298-99; Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997).  To succeed on a claim

of unconstitutional conditions of confinement, this court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303). If the court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Otherwise, "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S. Ct. at 2399. Conditions that "cannot be said to be cruel and unusual under contemporary standards

23

are not unconstitutional." Id.  The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 417, 107 L. Ed. 2d 382 (1989) (footnote omitted).

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard.  Wilson, 501 U.S. at 303.  "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n.8).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Plaintiff has alleged no facts which show that the defendant or any other party acted with "deliberate indifference" in either creating these conditions or failing to respond to them.  Plaintiff has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that defendants actually drew an inference that an <u>excessive</u> risk of harm to plaintiff existed because of the conditions he described.

Plaintiff stated that HOD had no tables to eat on and that the showers caused condensation on the ceiling that dripped onto the food. He also complained that the toilets in the cells were right next to where he had to eat and that "the water's undrinkable" because it was "brown and . . . tastes real bad.  It comes out the sink which is connected to the toilet, and it's not clear at all; it tastes horrible."  Certainly, food and water must be provided to prisoners. States violate the Constitution if they fail to provide prisoners with reasonably adequate food, water, clothing, shelter and sanitation.  <u>Gates v. Cook,</u> 376 F.3d 323, 332 (5th Cir. 2004) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)).

However, plaintiff's allegations in this case, while describing less than ideal conditions, do not state a violation of plaintiff's constitutional rights. Constitutional standards require only that prison authorities provide an inmate with the basics in this regard, including "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" <u>Berry v. Brady</u>, 192 F.3d 504, 507 (5th Cir. 1999) (quoting <u>Green v.</u>

Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)).  Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food or water. The Constitution does not require that convicted inmates be provided with particular consumables at a certain temperature or tastiness or with every culinary amenity which one may find desirable.  Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)).

The Constitution also does not require that plaintiff receive particular amounts or kinds of food.  Green, 801 F.2d at 770.  "'Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation.'  Even on a regular, permanent basis, two meals a day may be adequate."  Berry, 192 F.3d at 507 (quoting Green, 801 F.2d at 770-71).  Further, "inmates cannot expect the amenities, conveniences and services of a good hotel."  Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988). Plaintiff was never denied food or water.  Colby's complaints about the food at the jail are legally frivolous and must be dismissed.

Short-term sanitation problems of the sort described by Colby, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).

"[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, 351 Fed. Appx. 274, 2009 WL 3438004, at *4 (10th Cir. 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

None of Colby's allegations about the conditions at the jail establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.  "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Moreover, Colby cannot establish "deliberate indifference."  Although plaintiff complained "they never give cleaning supplies to wipe down the walls, he also stated that

27

"once every week they send in cleaning supplies to mop the floors."  Prison officials can constitutionally require inmates to keep their cells, living space and clothing clean by providing, or by requiring non-indigent inmates to purchase, cleaning supplies.  <u>Blake v. Hall</u>, 668 F.2d 52, 57-58 (1st Cir. 1981); <u>Lancaster v. Tilton</u>, No. C 79-01630 WHA, 2008 WL 449844, at *19 (N.D. Cal. Feb. 15, 2008) (citing <u>Gates</u>, 376 F.3d at 342; <u>Gibson v. Lynch</u>, 652 F.2d 348, 352 (3d Cir. 1981)); <u>Sardon v. Peters</u>, No. 04-C-7505, 1995 WL 609147, at *8 (N.D. Ill. Oct. 13, 1995).  "This Eighth Amendment analysis does not change merely because the conduct of some inmates may have caused or contributed to the conditions."  <u>Roberts v. County of Mahoning</u>, 495 F. Supp. 2d 670, 690 (N.D. Ohio 2005) (citing <u>Blake</u>, 668 F.2d at 57-58).

In the instant case, Colby merely disagrees that these efforts and supplies were adequate.  <u>See</u> <u>Tallmore v. Hebert</u>, No. 07-1220, 2008 WL 2597939, at *2 (W.D. La. May 28, 2008) (Hill, M.J.) (citing <u>Davis</u>, 157 F.3d at 1006; <u>Daigre v. Maggio</u>, 719 F.2d 1310, 1312 (5th Cir. 1983)) ("Clearly, prisons need not be completely sanitized or as clean as one's home might be . . . .  There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.").

Plaintiff's complaints of condensation dripping onto the food, toilets situated near to where he had to eat and brown, bad-tasting water all fail to state a constitutional claim.  <u>See, e.g.</u>, <u>Roper v. Strain</u>, No. 10-341, 2010 WL 923151, at * (E.D. La. Mar. 8, 2010)

(Lemelle, J.) (no constitutional claim when juice container was dragged across the floor before being placed on cart where juice was served); Wilkerson v. Champagne, No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) (Shushan, M.J.) (no constitutional claim when meals served from "old, cracked, dirty food trays" were not always hot); Sardon, 1995 WL 609147, at *8 (allegation that cold food was served fails to state a constitutional claim); Jackson v. Griffith, No. 1:93-CV-424, 1995 WL 21939, at *4-5 (E.D. Tex. Jan. 10, 1995), report & recommendation adopted, 1995 WL 313655 (Feb. 8, 1995) (claim regarding allegedly unsanitary food trays dismissed as frivolous).

Short-term living conditions such as those described by Colby during the four (4) months he was confined in HOD may be a temporary inconvenience, but he has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement.

In short, none of Colby's complaints about the conditions of his confinement rise to the level of a constitutional violation. Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. Talib v.

29

Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349

(1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

V.    SELF-IMPROVEMENT PROGRAMS

Colby's claims that HOD lacked job training, education, drug rehabilitation or

other self-improvement programs during his four-month incarceration are legally

frivolous and wholly fail to state a cognizable Section 1983 claim. His written

submissions stated that he needed such programs as a means to "better myself."

However, inmates have no protected liberty interest in specific educational, rehabilitative

or self-improvement opportunities. Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D.

Tex. 1991).

"[A] state has no constitutional obligation to provide basic educational or

vocational training to prisoners." Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988)

(citing Newman v. Alabama, 559 F.2d 283, 292 (5th Cir. 1977), rev'd in part on other

grounds sub nom. Alabama v. Pugh, 438 U.S. 781 (1978)); accord Miles v. Windham

Sch. Dist., 78 Fed. Appx. 418, 2003 WL 22408345, at *1 (5th Cir. 2003); Honshul v.

Foti, 51 F.3d 1045, 1995 WL 153425, at *2 (5th Cir. 1995).  Prisoners have no

constitutional right to participate in educational, work release, rehabilitation or other self-

improvement programs, particularly when no such programs exist at the facility. Joseph

v. U.S. Fed. Bureau of Prisons, 232 F.3d 901, 2000 WL 1532783, at *1-2 (10th Cir. Oct.

16, 2000) (unpubl. opin. avail. on Westlaw); <u>Wishon v. Gammon</u>, 978 F.2d 446, 450 (8th Cir. 1992); <u>Beck v. Lynaugh</u>, 842 F.2d 759, 762 (5th Cir. 1988); <u>Newman v. Alabama</u>, 559 F.2d 283, 292 (5th Cir. 1977), <u>rev'd in part on other grounds sub nom.</u> <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978); <u>Oladipupo v. Austin</u>, 104 F. Supp.2d 626, 638 (W.D. La. 2000). "Prisons are not educational institutions; there is no federal constitutional right to participate in a prison educational program." <u>Burnette v. Phelps</u>, 621 F. Supp. 1157, 1159 (M.D. La. 1985), (quoting <u>Newman</u>, 559 F. 2d at 292.)

Because Colby has no constitutional right to self-improvement programs, he fails to state claims cognizable under Section 1983.

VI.   <u>LAW LIBRARY</u>

Plaintiff testified that he was denied his First Amendment right of access to the courts because of an inadequate law library.  Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel.  <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Dickinson v. TX, Fort Bend County</u>, 325 Fed. Appx. 389, 2009 WL 1407935, at *1 (5th Cir. 2009); <u>Sandoval v. Johns</u>, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); <u>McDonald v. Steward</u>, 132 F.3d 225, 230 (5th Cir. 1998); <u>Degrate v. Godwin</u>, 84 F.3d 768, 768-69 (5th Cir. 1996).  A prison need not provide its inmates with a library that results in the best possible access to the courts, but must provide a library or other assistance that meets

minimum constitutional standards of providing access to the courts. Petrick v. Maynard, 11 F.3d 991, 994 (10th Cir. 1993); Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991); Hargrove v. Henderson, No. 95-1601-CIV-T-17A, 1996 WL 467516, at *10 (M.D. Fla. Aug. 13, 1996), aff'd, 124 F.3d 221 (11th Cir. 1997); United States v. Janis, 820 F. Supp. 512, 515-16 (S.D. Cal. 1992), aff'd, 46 F.3d 1147 (9th Cir. 1995).

However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); accord Norton, 122 F.3d at 290; Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Colby must demonstrate that his position as a litigant was actually prejudiced. Lewis v. Casey, 518 U.S. 343, 356 (1996); Cochran v. Baldwin, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); Smith v. Polunsky, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. 2000); Eason, 73 F.3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351.

Colby wholly fails to establish the essential elements of a First Amendment claim detailed above, either in his complaint or his testimony, in the following ways.  First, Colby testified that he needed access to a law library at the prison to do research for a state court civil case in which he was a defendant and for his criminal case.  Colby acknowledged, however, that he was represented by an attorney in his criminal case.  Under these circumstances, plaintiff's right of access to the courts, as guaranteed by the Constitution and interpreted by <u>Bounds</u>, was clearly satisfied by his representation by counsel in his criminal proceedings.  <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1291 (11th Cir. 1998); <u>Schrier v. Halford</u>, 60 F.3d 1309, 1313-14 (8th Cir. 1995); <u>Mackin v. Carpenter</u>, 988 F.2d 1212, 1993 WL 82306, at *3 (5th Cir. 1993); <u>Mann v. Smith</u>, 796 F.2d 79, 83 (5th Cir. 1986); <u>Morrow v. Harwell</u>, 768 F.2d 619, 623 (5th Cir. 1985).

As to his civil case, plaintiff suffered no harm.  He conceded in his testimony that the "case might have been dropped" and that he had no trouble communicating with that court.  It is clear that no actual legal prejudice to Colby's position as a litigant of the type required by <u>Lewis</u> was caused by any action or omission of the defendants.  "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains."  <u>Hart v. O'Brien</u>, 127 F.3d 424, 446 (5th Cir. 1997), <u>abrogated in part on other grounds as recognized in</u> <u>Spivey v. Robertson</u>, 197 F.3d 772 (5th Cir. 1999); <u>accord</u> <u>Brown v. Bryan County</u>, 219 F.3d 450, 457 (5th

33

Cir. 2000).  In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.

For all of the forgoing reasons, Colby's claim concerning inadequate access to a law library at HOD is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

VII.   <u>CLAIMS AGAINST DOC</u>

In addition to his claims against OPP personnel, Colby asserts a claim against the State of Louisiana Department of Corrections.  28 U.S.C. § 1915(e)(2)(B)(iii) provides that, as to any case filed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . the action . . . seeks monetary relief against a defendant who is immune from such relief." The DOC itself is a department within the Louisiana state government.  La. Rev. Stat. Ann. § 36:401.  For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds.  <u>Anderson v. Phelps</u>, 655 F. Supp. 560, 564 (M.D. La. 1985).  Therefore, suit against the DOC is a suit against the State of Louisiana, which is prohibited by the Eleventh Amendment.  <u>Citrano v. Allen Correspondence. Ctr.</u>, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.")

(citing <u>Anderson</u>, 655 F. Supp. at 560 and <u>Bldg. Eng'r Serv. Co., Inc. v. La.</u>, 459 F. Supp. 180 (E.D. La. 1978)).

The State of Louisiana is immune from suit in federal court under the Eleventh Amendment.  Sovereign immunity under the Eleventh Amendment bars actions for monetary relief in federal court against a State or state agency unless the State has consented to be sued. U.S. Const. amend. XI; <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>Ala. v. Pugh</u>, 438 U.S. 781, 782 (1978); <u>Richardson v. Southern Univ.</u>, 118 F.3d 450, 452 (5th Cir. 1997).

Generally, the State of Louisiana has not waived its immunity or consented to the exercise of federal judicial power in civil actions against it.  La. Rev. Stat. Ann. § 13:5106(A); <u>Delahoussaye v. City of New Iberia</u>, 937 F.2d 144, 147 (5th Cir. 1991).  In each unsanctioned instance of federal suit for damages, the State or its agency, the DOC in this instance, must affirmatively waive its Eleventh Amendment immunity.  <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 305 (1990); <u>Stem v. Ahearn</u>, 908 F.2d 1, 4 (5th Cir. 1990).

Therefore, Colby's claims against the DOC for monetary damages are subject to dismissal with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii) because Colby's claims against the DOC are barred by Eleventh Amendment immunity.

Even if the DOC were not immune and Colby named some individual defendant as to this claim, Colby's complaint that he should have been transferred to a DOC facility immediately upon his sentencing fails to state a cognizable Section 1983 claim.  It is clear that a prisoner has no right of any kind springing from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another.  Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Fuselier v. Mancuso, 354 Fed. Appx. 49, 2009 WL 3780729, at *1 (5th Cir. 2009) (citing Olim, 461 U.S. at 245; Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996)); Biliski, 55 F.3d at 162.

Constitutionally protected liberty interests may be created not only by the Constitution itself, however, but also by state law.  Not every state statute creates a liberty interest protected by the Constitution and cognizable under Section 1983.  On the contrary, a state statute creates constitutionally protected interests only if it establishes that state officials must take mandatory, non-discretionary actions in connection with the life, liberty or property of citizens.  Olim, 461 U.S. at 249; Taylor v. Jagers, 115 Fed. Appx. 682, 2004 WL 2526373, at *1 (5th Cir. 2004) (citing Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989)); Lathers v. Nelson Coleman Corr. Ctr., No. 10-128, 2010 WL 1489903, at *3 (E.D. La. Mar. 22, 2010) (Shushan, M.J.), report & recommendation

36

adopted, 2010 WL 1485468 (E.D. La. Apr. 13, 2010) (McNamara, J.).  Thus, state statutes that vest officials with broad discretion to carry out their official functions do not create constitutionally protected interests that may form the basis for an action under Section 1983.  See Olim, 461 U.S. at 249-50 (Hawaii prison regulations vesting prison administrators with broad discretion concerning inmate placement and transfers create no liberty interest protected under the Due Process Clause); Merit v. Lynn, 848 F. Supp. 1266, 1267-68 (W.D. La. 1994) (Louisiana parole statute is broadly discretionary and creates no constitutionally protected liberty interest).

In the instant case, Colby's claim that he should have been housed in a DOC prison facility rather than in the HOD facility of OPP is governed by the related Louisiana statutes, La. Rev. Stat. § 15:566(B) and 15:824(B), which set forth the circumstances under which prisoners convicted of state criminal offenses are to be sent to DOC facilities from parish jails, and the myriad exceptions under which they may remain in parish facilities.  These statutes vest extremely broad discretion in the DOC officials who are responsible for the placement of state prisoners.  As one Louisiana appellate court stated, in interpreting La. Rev. Stat. § 15:824 and vacating the order of a trial judge who attempted to require the DOC to remove convicted state prisoners from Orleans Parish Prison to a DOC facility,

> [t]his statute clearly envisions that the Department of Corrections may be unwilling or unable to take physical custody of prisoners sentenced to hard

labor.  In such an event, the department is obligated to pay the local sheriff or jailer for the costs of keeping such a prisoner . . . . The legislature by these enactments has manifested a <u>clear intent to leave the physical placement of prisoners within the jurisdiction of the DOC alone.</u>

State v. Sylvester, 648 So. 2d 31, 33 (La. App. 4th Cir. 1994) (emphasis added); accord

Oglesby v. Gusman, No. 09-3593, 2009 WL 3254145, at *3-4 (E.D. La. Oct. 7, 2009)

(Vance, J.); Andrews v. Belt, No. 07-CV-1283, 2007 WL 3046130 (W.D. La. Oct. 2,

2007) (Kirk, M.J.), aff'd, 274 Fed. Appx. 359, 2008 WL 1747116 (5th Cir. 2008).

Thus, the State of Louisiana by its broadly discretionary statutes has <u>not</u> created

a protected liberty interest in being housed in a particular prison or being transferred to

a DOC facility.  Colby has no constitutional right to be housed in a DOC prison or any

particular facility, under either the Constitution or state law. This claim is legally

frivolous and fails to state a cognizable Section 1983 claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint

be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a

claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____23rd____ day of November, 2010.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.